**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas P. ATTSON,
Defendant–Appellant.**

No. 89–10041.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1990.

Decided April 19, 1990.

David Lee Titterington, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

Wallace H. Kleindienst, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before WALLACE, ALARCON and LEAVY, Circuit Judges.

WALLACE, Circuit Judge:

Attson appeals from his conviction for manslaughter pursuant to 18 U.S.C. §§ 1111 and 1152. Attson unsuccessfully moved in the district court to suppress evidence of a blood alcohol analysis conducted by a government-employed doctor. It is this denial he raises before us. The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I

In the early morning hours of June 21, 1986, Attson was driving his vehicle on Route 7 near Chinle, Arizona. Attson lost control, drove off the road, and crashed, resulting in the death of one of his passengers. Attson was taken to the Chinle Public Health Service Hospital for emergency medical treatment.

At the hospital, Attson signed a consent form that allowed him to receive emergency medical care. The district court found that in signing this consent form Attson "did *not* consent to the taking of blood *for police use*," but did consent to its use for medical purposes. (Emphasis added.) Although Attson did not appear to be seriously hurt, medical personnel detected the scent of alcohol on his breath and Dr. Patel, Attson's attending physician, reasoned that the presence of alcohol in Attson's body might mask symptoms of serious pain and might be important in determining the sorts of medicines that could be administered. Dr. Patel instructed Nurse Ginnane to draw a blood sample, send it to the hospital laboratory for a blood-alcohol analysis, and write the blood alcohol level on Attson's chart. Ginnane did so. At oral argument, the government conceded that Dr. Patel and the other members of the medical staff who treated Attson were employees of the federal government.

As the district court observed, the record contained some evidence suggesting that the police present in the hospital had requested Dr. Patel to take a blood sample. Dr. Patel, however, testified that he drew the blood sample and analyzed it for *medical* reasons alone. The district court was persuaded by Dr. Patel's testimony and found that Dr. Patel "normally requests a blood sample in this type of accident for medical reasons" and "that he indeed drew the blood for medical reasons."

After the blood sample was taken from Attson and analyzed, the information regarding Attson's blood alcohol level remained with the hospital and was not divulged to the police. The hospital only released the information on Attson's blood alcohol level pursuant to a grand jury sub-poena nearly a year after the accident. The prosecution introduced evidence of Attson's blood alcohol level at Attson's trial for manslaughter.

 The district court's findings of fact relating to suppression of evidence are reviewed for clear error. *United States v. Walther*, 652 F.2d 788, 791 (9th Cir.1981) (*Walther*). The scope of application of the fourth amendment presents an issue of law which is reviewed de novo. *Jones v. Berry*, 722 F.2d 443, 446 n. 4 (9th Cir.1983), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2343, 80 L.Ed.2d 817 (1984).

## II

This case presents what is apparently an issue of first impression in this circuit: whether the strictures of the fourth amendment apply to the conduct of a government doctor who, for medical reasons, takes a blood sample from a criminal suspect and conducts a blood alcohol analysis on that sample.

 The fourth amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Implicit in this language is the notion that the amendment applies to a limited range of governmental conduct. The phrase "searches and seizures" connotes that the type of conduct regulated by the fourth amendment must be somehow designed to elicit a benefit for the government in an investigatory or, more broadly, an administrative capacity. Thus, unlike the "state actor" requirement of the fourteenth amendment, the fourth amendment cannot be triggered simply because a person is acting on behalf of the government. Instead, the fourth amendment will only apply to governmental conduct that can reasonably be characterized as a "search" or a "seizure." Therefore, as the District of Columbia Circuit stated in *Jones v. McKenzie*, 833 F.2d 335, 338 (D.C. Cir.1987), *amended in part*, 878 F.2d 1476 (D.C.Cir.1989), "[t]o determine whether a given governmental activity is of the kind that is prohibited by the Fourth Amend-

ment, we must first ask whether the action is a 'search' [or a 'seizure'].'' This threshold inquiry is particularly appropriate where the challenged conduct falls outside the area to which the fourth amendment most commonly and traditionally applies—law enforcement.

### A.

"Only rarely ... has the [Supreme] Court considered the nature of fourth amendment restrictions on the conduct of government officials in noncriminal investigations." *The Supreme Court, 1986 Term—Leading Cases*, 101 Harv.L.Rev. 119, 230 (1987). Even rarer are the instances in which the Court has considered the application of the fourth amendment to noncriminal *noninvestigatory* governmental conduct. Yet, when the Court has considered the application of the fourth amendment to governmental conduct in a noncriminal context, it has been careful to observe that the application of the amendment is limited.

In *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), the plurality chronicled the steady expansion of the scope of the fourth amendment into non-law enforcement areas, observing that

> [t]he strictures of the Fourth Amendment ... have been applied to the conduct of governmental officials in various civil activities. *New Jersey v. T.L.O.*, 469 U.S. 325, 334–35 [105 S.Ct. 733, 738–39, 83 L.Ed.2d 720] (1985). Thus, we have held in the past that the Fourth Amendment governs the conduct of school officials, see [*id.*], building inspectors, see *Camara v. Municipal Court*, 387 U.S. 523, 528 [87 S.Ct. 1727, 1730, 18 L.Ed.2d 930] (1967), and Occupational Safety and Health Act inspectors, see *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–313 [98 S.Ct. 1816, 1820–1821, 56 L.Ed.2d 305] (1978).

*Id.* at 714–15, 107 S.Ct. at 1497; *see also National Treasury Employees Union v. Von Raab*, —— U.S. ——, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685 (1989) (holding that the fourth amendment applies to the conduct of government employers who conduct drug tests on their employees). Yet, while the reach of the fourth amendment has been extended to include various types of governmental conduct outside the traditionally recognized area of law enforcement, the Court has been careful to limit this expansion to governmental conduct that can reasonably be said to constitute a "search" or a "seizure" within the meaning of the fourth amendment. The types of non-law enforcement conduct to which the Court has extended the scope of the amendment are thus typically motivated by some sort of investigatory or administrative purpose designed to elicit a benefit for the government. In *New Jersey v. T.L.O.*, 469 U.S. 325, 334–35, 105 S.Ct. 733, 738–39, 83 L.Ed.2d 720 (1985) (*T.L.O.*), for example, the Supreme Court stated that the fourth amendment applies to governmental conduct whether " 'the government's motivation is to *investigate* violations of criminal laws *or* breaches of other statutory or regulatory standards.' " *Id., quoting Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–13, 98 S.Ct. 1816, 1820–21, 56 L.Ed.2d 305 (1978) (*Marshall*) (emphasis added). Thus, while the Court in *T.L.O.* extended the reach of the fourth amendment to the conduct of school administrators, it made that extension in the context of "investigative" activities—activities that fall squarely within the meaning of the terms "searches" or "seizures." Similarly, in *National Treasury Employees*, the Court expanded the reach of the fourth amendment "beyond the normal need for law enforcement" noting that the drug tests challenged in that case were "intrusion[s] serv[ing] special governmental needs." 109 S.Ct. at 1390. Of course, conduct actuated by investigatory motives is not the only type of governmental conduct regulated by the fourth amendment. The Court has held that the fourth amendment applies, in differing degrees, to governmental conduct carried out for administrative, as well as criminal investigatory, purposes. *Camara v. Municipal Court*, 387 U.S. 523, 535, 87 S.Ct. 1727, 1734, 18 L.Ed.2d 930 (1967) (*Camara*).

 Under the proper factual circumstances, therefore, governmental conduct that is motivated by investigatory or ad-

ministrative purposes will fall within the scope of the fourth amendment since such conduct constitutes a search or seizure, the type of conduct that is regulated by the amendment. This, in turn, implies that governmental conduct which is not actuated by an investigative or administrative purpose will not be considered a "search" or "seizure" for purposes of the fourth amendment. In order for us to determine whether non-law enforcement governmental conduct can be considered a "search" or "seizure" under the fourth amendment, it is therefore necessary for us to evaluate whether such conduct has as its purpose the intention to elicit a benefit for the government in either its investigative or administrative capacities.

### B.

██ The necessity of such an inquiry is evident in the reasoning of the cases expanding the scope of the fourth amendment to non-law enforcement governmental activities. *See, e.g., T.L.O.,* 469 U.S. at 335, 105 S.Ct. at 739 (explaining that the fourth amendment applies to the conduct of a governmental official " 'whether the government's *motivation* is to *investigate* violations of criminal laws *or* breaches of other statutory or regulatory standards' ") (emphasis added), *quoting Marshall,* 436 U.S. at 312–13, 98 S.Ct. at 1820–21; *Camara,* 387 U.S. at 535, 87 S.Ct. at 1734 (holding that *"inspection programs ...* aimed at securing city-wide compliance with minimum physical standards for private property" were covered by the fourth amendment) (emphasis added). Moreover, such an inquiry is required in order to determine whether the challenged conduct is covered by the language of the fourth amendment, which applies to "searches and seizures" and protects the right of the people to be "secure" from such governmental conduct. Finally, the issue of whether and to what extent the conduct of *law enforcement officials* themselves is covered by the fourth amendment often turns on whether their conduct can be considered a search or seizure. *See, e.g., United States v. Kerr,* 817 F.2d 1384, 1386–87 (9th Cir.1987) (distinguishing between a voluntary encounter

with the police, in which the fourth amendment does not apply, and an investigative stop, in which it does). We thus conclude that the issue of whether the fourth amendment applies to an instance of non-law enforcement governmental conduct requires us to decide whether that conduct was intended as a search or a seizure, be it in the context of a criminal investigation or an administrative inspection. We therefore must determine what motivated Dr. Patel to draw and analyze Attson's blood.

The issue of whether the challenged conduct in this case qualifies as conduct covered by the fourth amendment should not be confused with the issue of whether Attson possessed a "reasonable expectation of privacy" in his blood. *See United States v. Katz,* 389 U.S. 347, 360–61, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Court held that an individual does possess a privacy interest in his blood for purposes of the fourth amendment. But the question of whether the challenged governmental conduct is the type of conduct proscribed by the fourth amendment analytically precedes the question of whether there is a privacy interest at stake here. In other words, if the taking of Attson's blood sample was not the kind of governmental conduct regulated by the fourth amendment, his privacy interest under the amendment could not have been infringed by such conduct. Therefore, if we decide that the conduct challenged by Attson did not constitute a search or seizure under the fourth amendment, we do not need to reach the question of whether the taking of Attson's blood sample infringed upon any legitimate expectation of privacy he may have had.

### C.

The district court's decision in this case rested upon the notion that because Dr. Patel acted solely for medical reasons in extracting the blood from Attson, his conduct was somehow "transformed" into the act of a private party. We find no support

for this transformation theory; the district court cited no persuasive authority demonstrating why a government doctor acting for a medical purpose should be stripped of his status as a government employee and should then fictionally be considered a "private" actor. Nevertheless, while we cannot endorse the district court's transformation theory, we do find guidance, by way of analogy, in cases dealing with the application of the fourth amendment to private parties.

Determining whether the conduct of a non-law enforcement governmental party is subject to the fourth amendment presents a question that is analytically quite similar to determining whether the conduct of a private party is subject to the fourth amendment. Both of these analyses proceed from the premise that at its core the fourth amendment was designed to apply to the conduct of law enforcement officials engaged in criminal investigations and that if the application of the fourth amendment is to expand beyond that core, the conduct to which it expands must approximate the types of activities to which the amendment is primarily directed; in other words, such conduct must be considered a "search" or "seizure." In addition, both analyses require us to gauge whether the party whose actions are challenged intended to assist the government in activities ("searches or seizures") covered by the fourth amendment, or whether his motivation was independent of such considerations. We therefore turn for guidance to the case law governing the application of the fourth amendment to private parties.

In *Walther*, 652 F.2d at 791, we articulated the basic rule governing the application of the fourth amendment to private parties. We stated that "where a private party acts as an 'instrument or agent' of the state in effecting a search or seizure, fourth amendment interests are implicated." *Id.* To determine whether a private individual has acted as an "instrument or agent" of the government within the scope of the fourth amendment, we set forth a two-part test: in order for the fourth amendment to apply, we must ascertain "(1) the government's knowledge and ac-

quiescence [of the challenged conduct], and (2) *the intent of the party performing the search.*" *Id.* at 792 (emphasis added). It is the second prong of the *Walther* test that we find useful in developing our analysis for this case.

*Walther* concerned the actions of an airline employee who had routinely reported suspicious packages to Drug Enforcement Administration agents in exchange for a monetary reward. Employing the second part of the test, we held that his conduct was subject to the fourth amendment because his expectation of an award provided him with "the requisite mental state of an 'instrument or agent'" of the government in the government's effort to effect a search or seizure. *Id.* We were careful to point out, however, that "where the private party has had a *legitimate independent motivation* for" engaging in the challenged conduct, the fourth amendment would not apply. *Id.* (emphasis added); *see also United States v. Gomez*, 614 F.2d 643 (9th Cir.1979) (search of luggage conducted by an airline employee for airline-related reasons not subject to the fourth amendment); *cf. United States v. Henry*, 615 F.2d 1223, 1228 (9th Cir.1980) (significant participation of the government in the development and implementation of an airport search program triggered application of the fourth amendment).

In *United States v. Howard*, 752 F.2d 220, 227 (6th Cir.) (*Howard*), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985), the Sixth Circuit adopted and applied the "legitimate independent motivation" test articulated in *Walther*. In *Howard*, the court held that an insurance company investigator was not subject to the fourth amendment because his intent in conducting the search was "entirely independent of the government's intent to collect evidence for use in a criminal prosecution." *Id.* Since the insurance investigator in *Howard* did not act in order to benefit the government in its investigative (or administrative) capacity, his conduct was held to be outside the scope of the fourth amendment. The intent test described in *Walther* and further refined and

applied in *Howard* thus recognizes that a party is subject to the fourth amendment only when he or she has formed the necessary intent to assist in the government's investigative or administrative functions; in other words, when he or she intends to engage in a search or seizure. However, under this test, the fourth amendment will not apply when the private party was acting for a reason that is independent of such a governmental purpose.

■ The intent test formulated in *Walther* and used to determine whether a private party is subject to the fourth amendment is equally applicable in the context of deciding whether non-law enforcement government employees are subject to the fourth amendment. Such a test is implied by the case law, which requires us to ascertain the motives underlying governmental conduct that is purportedly subject to the fourth amendment, particularly outside the traditional area of law enforcement. Moreover, such a test is required in order to determine whether the challenged governmental conduct is actually a "search" or "seizure." We thus conclude that for the conduct of a governmental party to be subject to the fourth amendment, the governmental party engaging in that conduct must have acted with the intent to assist the government in its investigatory or administrative purposes and not for an independent purpose.

### III

Attson argues that Dr. Patel drew his blood in order to further the government's investigative purpose of obtaining evidence against Attson for his manslaughter trial. Attson does not contend that Dr. Patel acted for any other sort of investigative or administrative purpose covered by the fourth amendment. We therefore focus our analysis on whether the taking of Attson's blood constituted a search or seizure designed to further the government's purpose of obtaining evidence against Attson in its criminal investigation.

■ In evaluating Dr. Patel's motivation in drawing Attson's blood, we are constrained to accept the findings of the district court if such findings are not clearly erroneous. *Walther,* 652 F.2d at 791. The district judge stated that he was "persuaded by Dr. Patel's testimony, to wit, (1) that he normally requests a blood sample in this type of accident for medical reasons, and (2) that he indeed drew the blood for medical reasons." On matters of credibility, such as whether to believe Dr. Patel's testimony, we will rarely overturn the factual findings of a district court. *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *SEC v. Rogers,* 790 F.2d 1450, 1455 (9th Cir.1986).

■ Attson has not persuaded us that Dr. Patel's testimony was not credible. Although there is some evidence in the record indicating that the police requested a blood sample be taken and analyzed, there is nothing to suggest that this request instigated Dr. Patel's actions. Indeed, Dr. Patel specifically testified that the police requests did not influence his decision to draw the blood and the district court accepted his testimony. He also offered specific medical reasons for taking the blood sample. Finally, Dr. Patel's refusal to turn over the results of the analysis to the police lends further support to the district court's conclusion that his motivation in taking and analyzing the sample was purely medical. We conclude that the district court's finding of a medical purpose was not clearly erroneous.

Since Dr. Patel drew and analyzed Attson's blood for purely medical reasons, he did not possess the requisite intent to engage in a search or seizure under the fourth amendment. In taking the blood, Dr. Patel did not intend to elicit a benefit for the government in its investigative or administrative capacity. Rather, he acted for a reason "entirely independent of the government's intent to collect evidence for use in [Attson's] criminal prosecution." *Howard,* 752 F.2d at 227. We therefore conclude that the district court properly refused to suppress the evidence of Attson's blood alcohol level.

## IV

Attson cites two cases for the proposition that Dr. Patel's mere status as a governmental employee triggers application of the fourth amendment: *Griffin v. Maryland*, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964), a fourteenth amendment case involving the question of whether a deputized security guard was a state actor for purposes of the fourteenth amendment, and *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), a 42 U.S.C. § 1983 case brought by a prisoner alleging deprivation of his eighth amendment rights. Neither of these cases involved an application of the fourth amendment and therefore neither is relevant to the peculiar and subtle type of analysis required to determine whether the amendment applies to the conduct at issue in this case. We cannot crudely incorporate the "state actor" standard of the fourteenth amendment or the "color of law" standard of section 1983 into a fourth amendment analysis without greatly distorting the standards governing that amendment's application. We therefore conclude that *Griffin* and *West* are irrelevant for purposes of deciding this case.

Attson also cites for support *United States v. Harvey*, 701 F.2d 800 (9th Cir. 1983), in which we held that evidence of a blood sample used to show the blood alcohol level of a manslaughter defendant must be suppressed. Although *Harvey* appears factually similar to *Attson* at first glance, upon further examination *Harvey* is distinguishable on the basis of one major fact: no medical reason existed in *Harvey* for the taking of the blood sample. Indeed, in *Harvey* we compared the facts at issue there with the facts at issue in *Schmerber*, where, after the accident, "the *officer* proceeded to the hospital *to take the defendant's blood sample*." *Id.* at 803 (emphasis added). Moreover, an investigator, rather than a member of the hospital staff, asked Harvey whether he would consent to give a blood sample. *Id.* at 802. As these facts make clear, the defendant in *Harvey* was brought to the hospital in order to have a blood sample taken for evidence in a police investigation. In this case, by contrast, the district court found that the reason Attson was taken to the hospital and had a blood sample taken was to receive medical care for a serious accident. *Harvey* is thus distinguishable.

## V

Since the district court's judgment that Dr. Patel acted for a medical purpose was not clearly erroneous, we conclude that Dr. Patel's conduct was not subject to regulation by the fourth amendment. Since the fourth amendment does not apply to the challenged conduct at issue in this case, the district court properly refused to suppress the evidence of Attson's blood alcohol level.

AFFIRMED.