**In re Lizabetha KERLO, Debtor.**

**No. SA 02–18998 JR.**

United States Bankruptcy Court,
C.D. California.

March 26, 2004.

Richard M. Moss, Santa Ana, CA, for Debtor.

Weneta M.A. Kosmala, Irvine, CA, Bankruptcy Trustee.

Arthur Marquis, Office of the United States Trustee, Santa Ana, CA, U.S. Trustee.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

### I. INTRODUCTION

On November 11, 2002, Lizabetha Kerlo ("Debtor") filed a chapter 7[1] petition. Debtor listed real property located at 902 South Oak Street, Santa Ana, California (the "Property") on her schedules. Debtor resides on the Property and also rents the Property to a number of tenants (the "Tenants"). Weneta M.A. Kosmala ("Trustee") is the chapter 7 trustee.

Trustee obtained two orders (the "Orders") requiring Debtor to turn over possession of the Property to Trustee. After

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

Debtor failed to comply with the Orders, Trustee moved for a finding of civil contempt, sanctions against Debtor, and a writ of possession and order of ejectment to enforce the Orders (the "Motion"). Debtor opposed the Motion and requested that she be given additional time to refinance the Property and pay her creditors.

At the hearing on February 13, 2004, I found Debtor in contempt. With respect to enforcement of the Orders, I instructed Trustee to submit a supplemental brief addressing available remedies and whether enforcing the Orders implicated possible Fourth Amendment rights of Debtor or the Tenants. Debtor was given five days to respond.

## II. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(1). This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (E).

## III. STATEMENT OF FACTS

Debtor listed the value of the Property on her schedules as $200,000. Trustee determined that the fair market value of the Property was substantially higher and that administering the Property would generate a significant return for the estate.[2] On April 4, 2003, Trustee obtained an order (the "First Order") requiring Debtor to immediately turn over the Property to Trustee and authorizing Trustee to employ real estate agent Clarence Yoshikane to market and sell the Property. However, Debtor and her son were allowed to remain on the Property until further court order. The First Order was served on Debtor.

On July 8, 2003, Trustee obtain an order (the "Second Order"), requiring Debtor to turn over the Property in a vacant condition. The Second Order was to become effective seven days after entry unless Debtor converted her case to chapter 13, in which case it would be stayed pending confirmation and completion of a chapter 13 plan. If Debtor's case was reconverted to chapter 7, the Second Order would become immediately effective. Again, the Second Order was served on Debtor.

Debtor converted her case to chapter 13 on July 16, 2003. At the plan confirmation hearing, Debtor's case was reconverted to chapter 7. Debtor did not vacate the Property. Yoshikane attempted to enter the Property on several occasions, but was denied access by Debtor. On February 3, 2004, Trustee served notice on all occupants of the Property, stating that all tenancies and licenses on the Property were terminated and demanding immediate possession. Trustee also posted the notice on the Property.

On February 6, 2004, Trustee moved for a finding of civil contempt, sanctions against Debtor, and a writ of possession and order of ejectment. Trustee also requested that the United States Marshals Service be directed to take all necessary steps to remove all occupants from the Property. Finally, Trustee requested authorization to remove all personal property left on the Property and to place such property in a storage unit that would then be made available to Debtor and the Tenants.

Debtor opposed the Motion, requesting that she be allowed additional time to attempt to refinance the secured debt on the

2. In a declaration submitted with the Motion, Trustee stated that the current fair market value of the Property is between $399,000 and $425,000. Trustee also stated that the only lien on the Property was a trust deed in the amount of $135,500.04. Debtor claimed a homestead exemption in the amount of $44,000.

Property. Debtor admitted that she continued to rent rooms on the Property.

At the hearing on February 13, 2004, I found Debtor in contempt for willfully violating the Orders. With respect to sanctions, I instructed Trustee to submit evidence of the fees and costs she incurred as a result of Debtor's conduct.[3] I also found that a writ of possession was appropriate to enforce the Orders under Federal Rule of Civil Procedure ("FRCP") 69 and California law.

However, upon further consideration, I instructed Trustee to submit a supplemental brief addressing: (1) remedies available in enforcing the Orders and (2) whether enforcing the Orders implicated any Fourth Amendment rights of Debtor or the Tenants.[4] Trustee submitted a supplemental brief on February 20, 2002. Debtor did not respond.

## IV. DISCUSSION

### A. *Remedies Available in Enforcing the Orders*

Trustee argues that FRCP 69 applies and authorizes the court to employ the remedies available under California law to enforce the Orders. Trustee asserts that a writ of possession is the proper means of enforcing a judgment for possession under California law. Alternatively, Trustee argues that FRCP 70 authorizes the court to issue a writ of possession. Finally, Trustee argues that the court may use its equitable powers to enforce the Orders by a writ of possession and order of ejectment.

FRCP 69 provides in pertinent part:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Fed.R.Civ.P. 69 (applicable in bankruptcy under Fed. R. Bankr.P. 7069). FRCP 69 only applies to judgments for the payment of money. *Hamilton v. MacDonald,* 503 F.2d 1138, 1148 (9th Cir.1974). Here, the Orders do not involve the payment of money, and therefore FRCP 69 does not apply.

FRCP 70 provides that "[w]hen any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or assistance upon application to the clerk." Fed.R.Civ.P. 70 (applicable in bankruptcy under Fed. R. Bankr.P. 7070). In *Hamilton,* the district court issued a judgment declaring that the Hopi and Navajo indian tribes were entitled to joint and equal possession and ownership of certain reservations lands. *Hamilton,* 503 F.2d at 1142. In a later proceeding to enforce the judgment, the district court determined that the Hopi indian tribe had been improperly excluded from the reservation lands, and therefore issued a writ of assistance pursuant to FRCP 70. *Id.* On appeal, the Ninth Circuit affirmed, stating

---

**3.** Trustee has not submitted evidence of her fees and costs at this time. Therefore, this memorandum opinion will not address the award of sanctions.

**4.** I also instructed Trustee to advise Debtor that she would have five days from the filing of Trustee's supplemental brief to respond. Trustee's counsel submitted a declaration confirming that Debtor had been so advised.

that "a writ of assistance to deliver joint possession in the joint use area to the excluded Hopi Indian Tribe was agreeable to the usages and principles of law" and that such relief "clearly lies under the express terms of Fed.R.Civ.P. 70." *Id.* at 1143, n. 5.

■ However, because this is a contested matter, FRBP 7070 does not apply without a court order. Fed. R. Bankr.P. 9014(c). FRBP 9014(c) provides that certain of the rules governing adversary proceedings are applicable in contested matters "[u]nless the court directs otherwise." Fed. R. Bankr.P. 9014(c). FRBP 7070 is not listed under 9014(c). However, FRBP 9014(c) also provides that other adversary rules may be applied to contested matters upon notice and order from the court. Therefore, a court order applying FRBP 7070 is a necessary step in obtaining relief under FRBP 7070 in a contested matter.[5]

Here, the Second Order requires Debtor to deliver possession of the Property to Trustee. Pursuant to a noticed order to show cause hearing, the court ordered the application of FRBP 7070 to this matter. Therefore, a writ of execution under FRCP 70 is an available remedy to enforce the Second Order.

■ Additionally, § 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Under the Bankruptcy Code, a debtor has a duty to surrender property of the estate to the trustee. *Id.* § 521(4). Furthermore, a trustee has the duty to "collect and reduce to money the property of the estate for which such trustee serves …." *Id.* § 704(1). Finally, "any entity, other than a custodian, in possession, custody or control of property that the trustee may use, sell, or lease under section 363 of this title … shall deliver to the trustee, and account for, such property or the value of such property …." *Id.* § 542(a).

■ A bankruptcy court has authority to enforce judgments for possession of property through writs and other orders under § 105(a). *See Stone v. White (In re Stone),* No. 92–01383, 1998 WL 1819081, at *4 (Bankr.D.C. Nov.4, 1998) (discussing a writ of possession issued to enforce a turnover order); *Toledano v. Kittay (In re Toledano),* 299 B.R. 284, 299 (Bankr. S.D.N.Y.2003) (stating that in the event that the debtor or any other individuals occupying property of the estate did not voluntarily vacate the premises in accordance with the court's order, the trustee is authorized to direct the United States Marshals Service to effectuate the terms of the order by evicting all occupants from the premises).

Here, in order to carry out her statutory duties, Trustee must administer the Property for the benefit of creditors. Trustee is unable to market and sell the Property as a result of Debtor's failure to comply with the Orders. Accordingly, enforcing the Orders through a writ of execution is necessary and appropriate to carry out the provisions of the Bankruptcy Code.

---

5. As a matter of practice, in contested matters seeking to enforce an order for turnover of property of the estate from the debtor, trustees should request that the court apply FRBP 7070 in their motion.

## B. *Fourth Amendment Applicability*

Trustee argues that enforcement of the Orders does not implicate the Fourth Amendment rights of Debtor or the Tenants because (1) Trustee is not acting as an instrument or agent of the government and (2) Debtor and the Tenants no longer have a legitimate expectation of privacy with respect to the Property.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

### 1. *Trustee as Instrument or Agent of the Government*

The Fourth Amendment generally does not protect against unreasonable intrusions by private parties. *See Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). However, the Fourth Amendment applies to the conduct of private parties acting as instruments or agents of the government. *Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The Ninth Circuit has explained:

> [T]here exists a "gray area" between the extremes of overt governmental participation in a search and the complete absence of such participation. The resolution of cases falling within the "gray area" can best be resolved on a case-by-case basis with the consistent application of certain general principles.

*United States v. Walther,* 652 F.2d 788, 791–92 (9th Cir.1981) (citations omitted). In a later case, the Ninth Circuit stated:

The general principles for determining whether a private individual is acting as a governmental instrument or agent for Fourth Amendment purposes have been synthesized into a two part test. According to this test, we must inquire:

> (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the private party intended to assist law enforcement efforts or further his own ends.

*United States v. Reed,* 15 F.3d 928, 931 (9th Cir.1994) (citing *United States v. Miller,* 688 F.2d 652, 657 (9th Cir.1982)).

The same test applies to non-law enforcement government employees. *United States v. Attson,* 900 F.2d 1427, 1433 (9th Cir.1990). Discussing the second part of the test, the *Attson* court explained that " 'where the private party has had a *legitimate independent motivation* for' engaging in the challenged conduct, the fourth amendment would not apply." *Attson,* 900 F.2d at 1432 (quoting *Walther,* 652 F.2d at 792).

In *Attson,* Attson was convicted for manslaughter for driving his vehicle while drunk and causing the death of his passengers. When taken to a hospital, he consented to emergency care. The attending doctor ordered a blood test to see if alcohol was masking symptoms of pain. The district court allowed the blood test results at trial after denying a suppression motion. The Ninth Circuit affirmed after analyzing *Walther's* two part test: "(1) the government's knowledge and acquiescence [of the challenged conduct], and (2) the intent of the party performing the search." *Walther,* 652 F.2d at 792. Focusing on the second prong, the court concluded that the government doctor did not act with the intent to assist the police in its investigatory or administrative purposes. Rather, the doctor acted with an independent pur-

pose, that being to test the blood for medical reasons. *Attson,* 900 F.2d at 1432.

The Ninth Circuit has refused to apply the Fourth Amendment in several different contexts based on the legitimate independent motivation of the private party that engaged in the challenged conduct. *See Miller,* 688 F.2d at 657 (search of the defendant's residence by a private party for the purpose of recovering stolen property); *United States v. Chukwubike,* 956 F.2d 209, 212–13 (9th Cir.1992) (intrusive medical procedures used by a physician in order to protect the defendant's health and safety); *United States v. Gomez,* 614 F.2d 643, 645 (9th Cir.1979) (search of misplaced luggage by an airline employee for the purpose of identifying the owner).

 Furthermore, the involvement of government officials does not necessarily transform private conduct into a government search or seizure. *See Chukwubike,* 956 F.2d at 212–13 (defendant detained and transported to the hospital by customs officials prior to treatment by a physician); *Gomez,* 614 F.2d at 645 (misplaced luggage found and transported by a county detective prior to search by an airline employee). This is especially true where the purpose of the government presence is to ensure the safety of the private party and not to "reap the benefits" of the search or seizure. *Miller,* 688 F.2d at 658 (search of defendant's residence by a private party accompanied by a federal agent).

In *Taunt v. Barman (In re Barman),* 252 B.R. 403, 412–13 (Bankr.E.D.Mich. 2000), the bankruptcy court stated:

[The] circumstances surrounding the status and function of a trustee in a chapter 7 case all suggest a sufficient nexus to the government and its power that it is necessary and appropriate to apply to the trustee the fourth amendment limits on government power.

The *Barman* court began its analysis by applying the standard for whether the actions of a private person are fairly attributable to the government in the context of a violation of the Fourteenth Amendment.[6] In determining that a trustee acts under "color of law," the court discussed the statutory obligations, judicial control, and executive oversight of trustees under the Bankruptcy Code. *Id.* at 411–12. The court in *Spacone v. Burke (In re Truck–A–Way),* 300 B.R. 31, 38 (E.D.Cal.2003), cited *Barman* and implicitly adopted the holding without discussion.

Trustee correctly asserts that neither the *Barman* court nor the *Truck–A–Way* court applied the two part test articulated by the Ninth Circuit for determining whether a private party acted as an instrument or agent of the government. Instead, these courts determined that the Fourth Amendment applies because a trustee acts under color of law.

The Ninth Circuit has stated:

Unlike the "state actor" standard of the Fourteenth Amendment or the "color of law" standard of section 1983, the fourth amendment cannot be triggered simply because a person is acting on behalf of the government. The fourth amendment will only apply to government conduct that can reasonably be character-

---

**6.** The *Barman* court relied on *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), as providing an "analogous context under state law." *Lugar* involved a suit under 42 U.S.C. § 1983 for a violation of the Fourteenth Amendment. In beginning its analysis, the *Lugar* court ex-

plained that "[t]his case concerns the relationship between the § 1983 requirement of action under color of state law and the Fourteenth Amendment requirement of state action." *Lugar,* 457 U.S. at 924, 102 S.Ct. 2744.

ized as a "search" or a "seizure." Thus, for the conduct of a non-law enforcement governmental party ... to be subject to the Fourth Amendment, [plaintiff] must show that [defendant] acted "with the intent to assist the government in its investigatory or administrative purposes, and not for an independent purpose."

*Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 924 (9th Cir.2001) (citing *Attson,* 900 F.2d at 1429, 1433). Accordingly, the *Barman* and *Truck–A–Way* courts did not apply Ninth Circuit law when they determined that the Fourth Amendment governed a trustee's conduct.

■■■ Trustees in bankruptcy are not law enforcement officials. As previously discussed, a trustee is required to assemble assets of the estate, liquidate those assets for the benefit of creditors, and distribute proceeds of the estate to creditors. Although trustees may seek the assistance of governmental officials in carrying out their statutory and fiduciary duties and orders of the court, they do not act to assist the government in its investigatory or administrative activities. Rather, the trustees act independently under their statutory mandate in the Bankruptcy Code. Accordingly, a trustee or agent to a trustee is only subject to the Fourth Amendment if (1) the government knew of and acquiesced in the conduct and (2) the trustee acted with the intent to assist the government in its investigatory or administrative purposes. *Attson,* 900 F.2d at 1433.

Here, Trustee seeks to involve the government (the Marshals Service) to assist her in carrying out the Orders. Indeed, this is the only way that Trustee can effectively enforce the Orders. In doing this, Trustee's motivation is not to assist the government in any investigation or administrative action. Rather, Trustee's intent is to enlist the government to assist her in carrying out her statutory and fiduciary duties to creditors of the estate. Trustee's motivation is to maximize the value of the assets of the estate for distribution to creditors. Therefore, Trustee has a legitimate, statutory, independent reason for enforcing the Orders. She is not acting as an instrument or agent of the government to carry out or facilitate a governmental purpose that is subject to the limitations.

■■■ Additionally, the use of the Marshals Service to assist in implementing the Orders does not transform Trustee's actions into a government search or seizure. Rather, the sole purpose for involving the Marshals Service is to assist Trustee in removing Debtor, any other occupants, and any personal items on the Property, and to protect Trustee and her agents from any threats to their safety.

### 2. Legitimate Expectation of Privacy

■■■ To invoke Fourth Amendment protections, a person must show a legitimate expectation of privacy. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). A legitimate expectation of privacy requires both (1) a subjective expectation of privacy, and (2) an objectively reasonable expectation of privacy. *Id.* In determining whether someone has a legitimate expectation of privacy for Fourth Amendment purposes, courts consider the following factors: (1) whether the person has a proprietary or possessory interest in the place searched or property to be seized, (2) whether the person has the right to exclude others from the premises, (3) whether the person has taken normal precautions to maintain his or her privacy, and (4) whether the person is legitimately on the premises. *See United States v. Cella,* 568 F.2d 1266, 1280 (9th Cir.1977); *Shamaeizadeh v. Cunigan,* 338 F.3d 535, 544–45 (6th Cir.2003).

266

■ Generally, a person's home is "accorded the full range of Fourth Amendment protections." *Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). However, the *Barman* court observed:

> [D]ebtors who have filed for bankruptcy relief must have a significantly reduced expectation of privacy in their "houses, papers, and effects" that society is prepared to recognize as reasonable. The reduced expectation of privacy is a natural consequence of the substantial and detailed disclosures that are inherent in the bankruptcy process.

*Barman*, 252 B.R. at 414. On the other hand, a debtor is not automatically stripped of any and all reasonable expectations of privacy with respect to property of the estate due to a bankruptcy filing. *Id.* at 415. Rather, whether a debtor has a reasonable expectation of privacy with respect to certain property must be determined on a case by case basis. *See Rakas v. Illinois*, 439 U.S. 128, 147–48, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

No cases discuss whether a debtor who has been ordered to turn over property of the estate can have a legitimate expectation of privacy with respect to that property. However, in an analogous context, courts have stated that when a tenant's right to possession of leased premises has terminated, a government search of the premises does not violate the tenant's Fourth Amendment rights. *See Eisentrager v. Hocker*, 450 F.2d 490, 491–92 (9th Cir.1971); *see also United States v. Botelho*, 360 F.Supp. 620, 625 (D.Hawai'i 1973).

■ Additionally, guests in hotel rooms are generally afforded the same Fourth Amendment protections as persons in their homes. *Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *United States v. Nerber*, 222 F.3d 597, 600 n. 2 (9th Cir.2000). Any legitimate expectation of privacy of a guest with respect to a hotel room generally expires at checkout time. *United States v. Huffhines*, 967 F.2d 314, 318 (9th Cir.1992); *see also United States v. Haddad*, 558 F.2d 968, 975 (9th Cir.1977) (holding that a hotel guest lawfully ejected from his room for disorderly conduct had no possessory interest, and therefore no legitimate expectation of privacy with respect to the room).

Here, Debtor filed a bankruptcy petition, at which time the Property became part of the estate. Trustee determined that there was equity in the Property that could be administered for the benefit of creditors. Trustee obtained the First Order which allowed only Debtor and her son to remain on the Property. When Debtor failed to comply with the First Order, Trustee obtained the Second Order which required that Debtor and the Tenants vacate the Property upon reconversion of Debtor's case to chapter 7. Trustee served Debtor with a copy of the Orders and posted a notice on the premises stating that all tenancies and licenses were terminated. Debtor did not appeal or otherwise seek reconsideration of the Orders.

Upon reconversion, Debtor was required to surrender the Property to Trustee in a vacant condition pursuant to the Second Order. Accordingly, Debtor and the Tenants no longer have a possessory interest in the Property, cannot properly exclude Trustee or her agents from the Property, and are not "legitimately on the premises." *Cella*, 568 F.2d at 1280. Under these circumstances, neither Debtor nor the Tenants have a legitimate expectation of privacy with respect to the Property.

■ Additionally, a search or seizure of voluntarily abandoned property does not violate the Fourth Amendment. *Id.* at 1283. The *Cella* court explained:

> Abandonment in this context is not meant in the strict property-right sense,

but rests instead on whether the person so relinquished his interest in the property that he no longer retains a reasonable expectation of privacy in it at the time of the search.

*Id.* Because Debtor and the Tenants no longer have a legitimate expectation of privacy with respect to the Property, any personal items left on the Property constitute abandoned property for the purposes of the Fourth Amendment. Accordingly, the orderly removal of personal property by Trustee does not implicate any Fourth Amendment rights.

## V. CONCLUSION

FRBP 7070 authorizes a court to enforce a judgment for possession of property by issuing a writ of execution or assistance. Because Trustee is unable to administer the Property due to Debtor's failure to comply with the Orders, such relief is necessary and appropriate under these circumstances. Therefore, a writ of execution for possession of the Property in the form attached hereto as Exhibit A is issued by this court.

In addition, enforcement of the Orders does not implicate the Fourth Amendment rights of Debtor or the Tenants. Trustee is not acting as an instrument or agent of the government in enforcing the Orders. Furthermore, Debtor and the Tenants do not have a legitimate expectation of privacy with respect to the Property or any personal items left thereon.

This memorandum opinion shall constitute my findings of fact and conclusions of law.

## EXHIBIT A

### WRIT OF EXECUTION FOR POSSESSION OF REAL PROPERTY

TO THE UNITED STATES MARSHALL FOR THE CENTRAL DISTRICT OF CALIFORNIA:

In the above referenced bankruptcy case, Debtor was ordered to deliver possession of real property located at 902 South Oak Street, Santa Ana, California that includes the residence, and garage structure and attached room (the "Property") to Weneta M.A. Kosmala ("Trustee") as chapter 7 trustee (the "Order"). However, Debtor and other tenants on the Property have refused to comply with the Order. Therefore, pursuant to Federal Rule of Bankruptcy Procedure 7070, as made applicable to this proceeding by order of this court dated March 26, 2004, and § 105 of the Bankruptcy Code, it is hereby

ORDERED that you are directed and authorized to enforce the judgment attached hereto as Exhibit "A" and entitled "ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION FOR ORDER COMPELLING DEBTOR TO TURNOVER CERTAIN REAL PROPERTY PURSUANT TO 11 U.S.C. SECTION 542" pursuant to the following terms and conditions:

1) Trustee and/or her agents are to accompany the United States Marshal to take possession of the Property;

2) Trustee, in her capacity as chapter 7 trustee of Debtor's estate, will act as custodian of any and all items of personal property left on the Property at the time possession is taken;

3) The United States Marshal, in taking possession of the Property, shall employ whatever reasonable force is necessary to enter the Property, regardless of whether the premises are locked or unlocked, occupied or unoccupied;

4) Anyone interfering with the enforcement of the Order is subject to arrest by the United States Marshal;

IT IS FURTHER ORDERED that Trustee is authorized to use estate funds to pay all reasonable and necessary fees and expenses incurred in enforcing the Order to the United States Marshal and/or to pay all reasonable and necessary expenses to remove and store the items of personal property left on the Property.

IT IS FURTHER ORDERED that Trustee is authorized to hire and pay all reasonable and necessary fees and expenses to a locksmith to assist in taking possession of the Property.

IT IS FURTHER ORDERED that Trustee shall take and store any abandoned personal property that is left on the Property and make such property available to Debtor and/or the other tenants on the Property upon request and reasonable notice. Any abandoned property that is not properly claimed shall be disposed of in accordance with California state law.