**Melissa MILWARD, Elyse Ugalde and Ashley Rose, Plaintiffs,**

v.

**Linda SHAHEEN, Barbara Ball, Maureen Bugnacki, Suda Amodt and District Board of Trustees of Valencia College, Florida, Defendants.**

**Case No: 6:15–cv–785–Orl–31TBS**

United States District Court, M.D. Florida, **Orlando Division.**

Signed October 28, 2015

Filed 10/29/2015

---

Christopher Robert Dillingham, II, Justin Matthew Eisele, Gagnon Eisele Dillingham, PA, Winter Park, FL, for Plaintiffs.

Richard E. Mitchell, Sara Huff, Grayrobinson, PA, Orlando, FL, for Defendants.

## ORDER

GREGORY A. PRESNELL, UNITED STATES DISTRICT JUDGE

This matter is before the Court without a hearing on the Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint, and Alternative Motion for Summary Final Judgment (Doc. 29) ("Motion"), the Plaintiffs' Amended Response in Opposition (Doc. 35) ("Response") and the Defendant's Reply (Doc. 49) ("Reply").

## I. Background

Plaintiffs are former students of Valencia College's Medical Diagnostic Sonography Program ("Valencia Sonography Program"), a highly competitive program that only admits 12 students per year. Sec. Am. Compl. at 6,, ¶ 23. The District Board of Trustees of Valencia College, Florida, is a statutorily-created board of trustees which governs Valencia College and is expressly constituted as a subdivision of the State of Florida. Sec. Am. Compl. at 3–4, ¶ 11. This matter arises from the Valencia Sonography Program's practice of having students perform invasive transvaginal ultrasounds on each other for learning purposes in a clinical laboratory setting. Sec. Am. Compl. at 6, ¶ 21. Plaintiffs allege that although Valencia College presented the transvaginal ultrasound probe practice as voluntary, its actual policy and practice was that the procedures were mandatory. Sec. Am. Compl. at 7, ¶ 27.

The suit names as defendants several employees of Valencia College–Barbara Ball, the Program Chair, Linda Shaheen, the Clinical and Laboratory Coordinator, Maureen Bugnacki, a Lab Technician, and Suda Amodt, a Laboratory and Physics Instructor (the "Individual Defendants")— as well as Valencia College itself (collectively "Defendants"). Sec. Am. Compl. at 4, ¶¶ 12–15. In addition to working for Valencia College, Suda Amodt is is a medical sonographer at Dr. P. Phillips Hospital. Id. The suit asserts violations by all Defendants of the Plaintiffs' First and Fourth Amendment rights, and seeks redress pursuant to 28 U.S.C. § 1983. Sec. Am. Compl. at 1, ¶ 1. The suit also asserts a federal civil conspiracy claim against all Defendants. Id.

Plaintiffs enrolled in the Valencia Sonography Program in 2013. Sec. Am. Compl. at 3–4, ¶ 12. After admission into the Program, Plaintiffs were required to attend an orientation in April 2013 that was designed to set their expectations as to how the Program operated. Sec. Am. Compl. at 6, ¶ 25 and 8–9 ¶ 31. Prior to the orientation, Defendant Shaheen provided the Plaintiffs with a "Sonography Questionnaire" that needed to be completed and returned before the orientation session. Sec. Am. Compl. at 7, ¶ 26. One of the questions on the questionnaire inquired of each student "How do you feel about allowing practice of transvaginal exams on you?" Def. Mot. To Dismiss, Exh. 1–A–1–C.[1] Plaintiffs all stated they were not comfortable with the procedure. Id. During the orientation, a second-year student explained that the Program faculty believed that students should undergo transvaginal ultrasound procedures because it would make them better sono-

---

1. The Court considers these documents although they are outside the face of the Complaint pursuant to the exception in *Fin. Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir.2007).

gram technicians. Sec. Am. Compl. at 6–7, ¶ 25. In fall 2013, Plaintiffs expressed concern about having to undergo vaginal probes during the Program, including their concern that a male student would be performing the procedure on a female student. Sec. Am. Compl. at 8, ¶ 31. Defendant Ball told the students they could find another school if they did not want to be probed. *Id.*

In March 2014, Milward and Ugalde consented to participation in the practice of vaginal probe procedures on fellow classmates. Sec. Am. Compl. at 9, ¶ 33. Rose refused to participate and therefore was not permitted to observe while the transvaginal probes occurred. Sec. Am. Compl. at 11, ¶ 37. Milward explained her concerns to Defendant Shaheen about the painful nature of the probings and the embarrassment of the sole male student probing her. Sec. Am. Compl. at 11, ¶ 38. Shaheen ignored these complaints. *Id.* Throughout Plaintiffs' tenure in the program, Defendants threatened to reduce all Plaintiffs' grades and interfere with their future employment opportunities if Plaintiffs did not submit to the classroom vaginal probes. Sec. Am. Compl. at 11, ¶ 39.

Amodt threatened to bar Rose from clinical practice at Dr. P. Phillips Hospital if Rose did not consent to allow fellow students to vaginally probe her. Sec. Am. Compl. at 12, ¶ 42. She further asserts Amodt graded her more harshly than the program's other students, giving her two failing grades on abdominal ultrasounds. Sec. Am. Compl. at 12, ¶ 43. Students who fail three such practicums fail the entire program. *Id.* During Rose's last two weeks in the program, Amodt took Rose into a nearby office during Rose's last clinical practicum at Dr. P. Phillips hospital and yelled at Rose for approximately one hour. Sec. Am. Compl. at 12, ¶ 44. When Rose suffered a panic attack and called Defendant Shaheen, Shaheen sent Rose to another hospital for clinical practice the following week. *Id.* However, Rose left the Program and did not return to clinical practice. *Id.* Milward and Ugalde eventually resigned from the Program. Sec. Am. Compl. at 12, ¶ 45.

## II. Standards

### A. Motion to Dismiss

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g., Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir.1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed.R.Civ.P. 10(c); *see also GSW, Inc. v. Long County, Ga.,* 999 F.2d 1508, 1510 (11th Cir.1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.,* 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed.R.Civ.P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.

*Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 683 (11th Cir.2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554–555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, 127 S.Ct. 1955, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950–1951, 173 L.Ed.2d 868 (2009).

### B. Qualified Immunity

 Qualified immunity protects municipal officers from liability in § 1983 actions as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Lewis v. City of West Palm Beach,* 561 F.3d 1288, 1291 (11th Cir.2009), cert. denied, 559 U.S. 936, 130 S.Ct. 1503, 176 L.Ed.2d 109 (2010). The applicability of qualified immunity is subject to a two-part test, which asks whether the officer's conduct amounted to a constitutional violation, and whether the right violated was clearly established at the time of the violation. *Id.* The order of the inquiry is fluid, giving us the flexibility to address the two issues in either order. *Id.* (citing *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

 A right may be clearly established for the purposes of qualified immunity in one of three ways: "1) case law with indistinguishable facts clearly establishing the constitutional right; 2) a broad statement of principle with the Constitution, statute, or case law that clearly establishes a con-stitutional right; or 3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Maddox v. Stephens,* 727 F.3d 1109, 1121 (11th Cir.2013) (quoting *Lewis v. City of West Palm Beach, Fla.,* 561 F.3d 1288, 1291–2 (11th Cir.2009)).

### III. Analysis

### A. Eleventh Amendment—Valencia College

 Under the Eleventh Amendment, states are immune from money damages in suits under 42 U.S.C. § 1983. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Moreover, the law is "well-settled that Eleventh Amendment immunity bars suits brought in federal court when an arm of the State is sued." *Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir.2003). A Florida community college is an arm of the state for Eleventh Amendment purposes. *See Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll.,* 421 F.3d 1190, 1195 (11th Cir.2005). Plaintiffs contend that the Ex Parte Young exception applies. *Ex parte Young,* 209 U.S. 123, 150–151, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The exception allows suits against state officers "seeking *prospective* equitable relief to end continuing violations of federal law." *McClendon v. Ga. Dep't of Cmty. Health,* 261 F.3d 1252, 1256 (11th Cir. 2001). However, the Eleventh Amendment bars monetary *and* equitable relief against the state and its instrumentalities. *Morris v. Wallace Community College–Selma,* 125 F.Supp.2d 1315, 1335 (S.D.Ala. 2001) (citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 120, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Therefore, the Ex Parte Young exception does not apply to Valencia College and Eleventh Amendment immunity bars the Plaintiffs' claim against the college.

**B.** Section 1983 claims against Individual Defendants

■ Defendants move for dismissal of Plaintiffs' § 1983 claims for failure to state a viable claim. There are two (2) essential elements to a § 1983 action: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), overruled on other grounds, *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Defendants assert that Plaintiffs' voluntary participation in, or abstention from, the practice of transvaginal scanning did not deprive them of a constitutional right. They argue that Plaintiffs do not plead, and cannot show, that the practice was unconstitutional under either the First or Fourth Amendments, as applied to the states by the Fourteenth Amendment. Defendants also contend that the claims against them are barred by the doctrine of qualified immunity where the individual Defendants acted reasonably and in good faith in the administration of a rigorous academic program.

### 1. 1st Amendment Violation

■ To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix,* 423 F.3d 1247, 1250 (11th Cir. 2005). As to the second prong, "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1254.

■ Defendants assert that Plaintiffs fail to allege what actions they took to protest Valencia College's policy and whether that amounted to protected speech. Plaintiffs allege that they "expressed concern to Defendant Ball" about undergoing the vaginal probes and that Milward "complained to Defendant Shaheen" about the probes. This is not protected speech. The law in *Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 271, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) has been adopted by other courts faced with the question of what protections are due student expression that touches upon internal school matters of pedagogical and curricular concern. The Court in *Hazelwood* found that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273, 108 S.Ct. 562. Other courts have found that "*Hazelwood* does not require [the courts] to balance the gravity of the school's educational purpose against [the student's] First Amendment right to free speech, only that the educational purpose behind the speech suppression be valid." *Curry ex rel Curry v. Hensiner,* 513 F.3d 570, 579 (6th Cir.2008). Furthermore, the "curriculum of a public educational institution is one means by which the institution itself expresses its policy, a policy with which others do not have a constitutional right to interfere." *Brown v. Li,* 308 F.3d 939, 951 (9th Cir. 2002). Where a student's speech threat-

ens a school's pedagogical and curricular system, it is not subject to the expansive protections applied to student political speech. *Heenan v. Rhodes,* 757 F.Supp.2d 1229, 1238 (M.D.Ala.2010).

■ The Court finds that Plaintiffs complaints to Defendants Ball and Shaheen do not constitute protected speech. In fulfillment of their duties as educators, the Defendants are tasked with inculcating the necessary knowledge, values, and experience, so that their sonography students can become valued and reliable members of the medical community upon graduation. It is with this purpose that they allowed students to participate in clinical exercises intended to increase their competency in performing transvaginal ultrasounds by practicing on each other. It is the role of teachers, and not federal judges, to define a school's educational curriculum—the courts may only step in "when the decision to censor ... student expression has no valid educational purpose." *Hazelwood,* 484 U.S. at 273, 108 S.Ct. 562. Plaintiffs cannot prevail on a First Amendment claim because their speech was not protected speech. Accordingly, the individual Defendants are entitled to qualified immunity. Count I is dismissed.

### 2. 4th Amendment Violation

■ The Fourth Amendment protects 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures'. It only applies to governmental conduct that can reasonably be characterized as a 'search' or a 'seizure'. Though the Eleventh Circuit has yet to address the issue, the Court of Appeals for the Ninth Circuit analyzed cases from the Supreme Court which considered the application of the Fourth Amendment to governmental conduct in a noncriminal context in *U.S. v. Attson,* 900 F.2d 1427, 1429 (9th Cir.1990). It found that where governmental conduct is motivated by investigatory or administrative purposes, it will fall within the scope of the Fourth Amendment since such conduct constitutes a search or seizure and, conversely, where governmental conduct is not actuated by an investigative or administrative purpose, it will not be considered a search or a seizure for Fourth Amendment purposes. *Id.* at 1430–1431. Here, the Defendants did not have the intent to elicit a benefit for the government in its investigatory or administrative capacity. Rather, their intent to help Valencia maintain its unique program and educate students on how to perform transvaginal ultrasounds does not implicate the Fourth Amendment. As such, the individual Defendants are entitled to qualified immunity because the facts are not sufficient to show a Fourth Amendment violation. Therefore, Count II must be dismissed.

### C. Civil Conspiracy Claim

■ In order to establish a § 1983 conspiracy, "a plaintiff must show among other things, that Defendants 'reached an understanding to violate [his] rights.'" *Rowe v. Fort Lauderdale,* 279 F.3d 1271, 1283 (11th Cir.2002) (citation omitted). Because Plaintiffs have not shown a violation of their constitutional rights, the civil conspiracy claim must fail. It is therefore

**ORDERED** that the Motion to Dismiss the Second Amended Complaint (Doc. 29) is **GRANTED.** Since there is no possibility of stating a viable claim against Defendants, the Dismissal is **WITH PREJUDICE.** The Alternative Motion for Summary Judgment is **DENIED** as

**MOOT**, and the Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 28, 2015.