# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44297

SHARON WECHSLER, )
                                                             )    **Pocatello, September 2017 Term**

      Plaintiff-Respondent, )

                                                             )    **2017 Opinion No. 123**

v. )

                                                             )    **Filed: December 6, 2017**

NORMAN J. WECHSLER, )

                                                             )    **Karel A. Lehrman, Clerk**

      Defendant-Appellant. )

_____ )

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. David C. Nye, District Judge.

The District Court's decision is <u>affirmed</u>. Attorney fees and costs on appeal are <u>awarded</u> to respondent.

May, Rammell & Thompson, Chtd., Pocatello, attorneys for appellant. Bron M. Rammell argued.

Racine, Olsen, Nye, Budge & Bailey, Chtd., Pocatello, attorneys for respondent. Stephen J. Muhonen argued.

_____

JONES, Justice.

## I. NATURE OF THE CASE

Appellant, Norman Wechsler ("Norman"), and Respondent, Sharon Wechsler ("Sharon"), divorced in New York in 2005. A Divorce Judgment, dated November 9, 2005, was entered in the office of the New York County Clerk on February 3, 2006, which set forth a distribution of the parties' property and maintenance obligations. In 2014, Sharon moved a New York court for an order to direct the entry of a money judgment in her favor because Norman had defaulted on his obligation to transfer funds according to the Divorce Judgment. On May 27, 2014, a New York court granted Sharon's motion and issued a $9,468,008.98 Judgment in her favor. On March 10, 2015, the New York Judgment was filed in Idaho as a Foreign Judgment (the "Foreign Judgment"). The issues on appeal relate to Sharon's attempt to collect on the Foreign Judgment.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 2012, Sharon partially collected on a $17,669,678.57 divorce-related Judgment by executing on Norman's house in Colorado. Between the acquisition of Norman's Colorado house, and the filing of the Foreign Judgment in Idaho, Norman did not disclose his updated address; accordingly, in an affidavit filed with the Idaho Foreign Judgment, Sharon indicated that Norman's last known address was the Colorado house that she had acquired. Unbeknownst to Sharon, Norman had moved to a rental apartment in Angel Fire, New Mexico. After living in New Mexico for one year, Norman moved to Pocatello, Idaho.

On May 2, 2013, a New York court issued an order appointing Joseph B. Nelson as receiver for the assets held by Norman, including Norman's interest in CYB Master, LLC, a holding company. The New York court reasoned that the appointment of a receiver was appropriate because Norman had not satisfied several divorce related judgments, nor had he paid maintenance and distributive award obligations. The New York court noted that Norman's interest in intangible assets, including interests in several LLCs, warranted the appointment of a receiver. The order granted Mr. Nelson wide-ranging authority to liquidate Norman's assets and disburse the resulting money to Sharon to satisfy the New York Judgment.

On August 26, 2015, Sharon moved for an order in Idaho to conduct a debtor's examination of Norman. Therein, she noted that the Foreign Judgment remained unsatisfied and claimed that an examination of Norman, under oath, could reveal property owned by Norman, or property in which Norman has an ownership interest, upon which she could execute. The district court issued an order for a debtor's examination, and on September 16, 2015, Sharon conducted a debtor's examination of Norman. Norman was evasive during the examination. For example, when asked whether he had caused CYB Master, LLC to transfer money or property to any individual or entity during the last three years, Norman replied "Well, you know, what do you mean did I cause some? Did the butterfly beating its wings in China cause the thunderstorm that we had two weeks ago in Pocatello?" However, Norman did state that: (1) he kept his personal business records in his house in Pocatello, Idaho; (2) his records for CYB Master, LLC are kept "[h]ither and yon" and may be on his computer in Pocatello; and (3) his records for life insurance policies are stored on a home computer owned by IntelliCorp (a company for which he is a director). Throughout the debtor's examination, Norman refused to answer many questions

relating to his business interests claiming that it was not his right to provide information of "third parties" to Sharon.

On the same day as the debtor's examination, Sharon served Norman a subpoena *duces tecum*, which demanded the production of records relating to his assets as well as his business and investment interests. On October 14, 2015, Norman sent a letter to Sharon in which he explained that he refused to produce documents pertaining to his business or investment interests because that information belonged to "third parties," and he did not have the right to produce those documents. On October 16, 2015, Norman filed an objection and request for a protective order for the subpoena *duces tecum*. On December 8, 2015, Sharon sent a letter to Norman, which requested the production of certain documents that were not produced as requested in the subpoena *duces tecum*. In support of her request, Sharon cited Idaho Rules of Civil Procedure 34(a) and 45(b), and stated that her request was a "good faith attempt to avoid bringing contempt proceedings." On January 7, 2016, Norman responded by letter and explained that he would not produce the requested documents.

On March 28, 2016, Sharon filed a motion to compel responses to certain debtor's examination questions. In support of her motion, Sharon attached an affidavit of her Idaho attorney, David Alexander; an affidavit of her New York attorney, Louis Black; and a memorandum. Sharon also filed a motion to appoint an ancillary receiver "to assist the primary receiver appointed over [Norman] in marshalling assets and property of [Norman] located within the State of Idaho."

In response, Norman filed a motion to strike the affidavit of Louis Black. Therein, he argued that certain exhibits attached to Mr. Black's affidavit should not be admitted because they were hearsay and lacked context or foundation. Norman also filed a motion to strike portions of Sharon's memorandum of law arguing that certain portions must be struck because they "contain redundant, immaterial, impertinent, or scandalous matter."

On May 11, 2016, the district court issued a decision addressing the motion to compel, the motion to appoint an ancillary receiver, and the motions to strike. The district court granted Sharon's motion to compel, writing:

> The [c]ourt hereby orders Norman to comply with Sharon's request and present answers to questions asked during the debtor's exam in relation to the two corporate entities owned by him. Furthermore, Norman is ordered to produce all

3

documents necessary for Sharon and the receiver to assess any and all assets that may be used to satisfy the debt.

The district court also granted Sharon's motion to appoint an ancillary receiver, David M. Smith, CPA (the "Ancillary Receiver"), to help the primary receiver, who was appointed by a New York court, in his fiduciary duties over CYB Masters, LLC. The district court denied Norman's motion to strike Louis Black's affidavit. The district court explained that Norman objected to emails attached to Mr. Black's affidavit, which purport to detail Norman's interests in various entities, on the grounds that they were inadmissible hearsay. The district court noted that the affidavit would not be struck because it was used during the course of discovery and the rules of discovery are broader than the rules of evidence. Similarly, the district court denied Norman's motion to strike portions of Sharon's memorandum.

On May 24, 2016, the district court issued an order appointing the Ancillary Receiver pursuant to Idaho Code section 8-601. Therein, the district court appointed David M. Smith as the Ancillary Receiver and granted him:

> all of the powers authorized pursuant to Idaho Code § 8-605, namely, . . . as receiver; to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the court may authorize.
>
> . . . .
>
> All parties to this action are ordered to cooperate with and assist the Ancillary Receiver in taking possession of the property described above. The past and/or present officers, directors, agents, members, managers, general partners, managing partners, trustees, attorneys, accountants, and employees of CYB Master LLC, any of the "Receivership Defendants" identified in the Order Appointing Receiver Pursuant to CPLR 5228, or any employee, officer, director, or agent of any second-tier or subsequent-tier entity, are ordered to turn over to the Ancillary Receiver forthwith all paper and electronic information belonging to and/or relating to CYB Master LLC, any of the "Receivership Defendants," and/or any second-tier or subsequent-tier entities or assets, in such manner as the Ancillary Receiver may specify.

Hours later, Norman filed an objection and response to Sharon's proposed order appointing the Ancillary Receiver.

On June 8, 2016, Sharon filed an Application for Writ of Assistance wherein she requested that the Bannock County Sheriff's Office assist the Ancillary Receiver in taking possession of Norman's business records. The Writ of Assistance (the "Writ") was issued that same day.

4

On June 16, 2016, the Ancillary Receiver, Deputy Nickel, and Sergeant Dalquist, of the Bannock County Sheriff's Department, served the Writ on Norman in an effort to collect the items as outlined therein. Norman refused to let the Ancillary Receiver or Sheriff's deputies in, and he did not produce any documents. Not wanting to escalate the situation, the Sheriff's deputies and the Ancillary Receiver left.

On June 17, 2016, Norman filed a notice of appeal of the district court's decision on the motion to compel, motion to appoint the Ancillary Receiver, and the motions to strike. This Court issued a Notice of Defect on July 12, 2016 advising that the decision was not appealable pursuant to Idaho Appellate Rule 11(a)(7). Also on June 17, 2016, Norman filed a motion to stay the enforcement of the district court's orders, which the district court denied. The district court reasoned that Norman's motion was "nothing more than another attempt . . . to avoid his duties and waste the time and resources of the judicial system."

On June 20, 2016, Sharon filed a motion for contempt seeking court assistance due to Norman's refusal to cooperate with the Ancillary Receiver's attempt to take possession of certain documents. Also on June 20, 2016, Norman filed an objection to the Writ arguing that it "grants unconstitutionally wide ranging seizure authority to the Bannock County Sheriff and the Receiver." Thereafter, Norman appealed the district court's grant of the Writ.

On July 18, 2016, the district court held a hearing on Sharon's motion for contempt. During the hearing, Norman made an oral motion regarding a perceived conflict of interest between the Ancillary Receiver and Sharon. On October 28, 2016, the district court issued a decision in which it denied Norman's motion regarding the conflict of interest. The district court explained that Norman's argument was twofold: (1) Sharon was paying the Ancillary Receiver and therefore his allegiance would be swayed to Sharon; and (2) Sharon's counsel represented the Ancillary Receiver. The district court rejected Norman's first argument and held that it was not a conflict of interest because Sharon was required by the district court's order to pay the Ancillary Receiver and then seek reimbursement, if available. The district court rejected Norman's second argument, noting that Sharon's counsel did not represent the Ancillary Receiver in the instant action; rather, Sharon filed contempt charges on behalf of the Ancillary Receiver after Norman refused to let him in his home to accomplish his court ordered duty. The district court continued, writing: "the so called 'representation' only occurred as a result of

5

[Norman's] alleged contempt. The [Ancillary Receiver] would not have needed any representation but for [Norman's] conduct."

On November 7, 2016, Norman filed a second amended notice of appeal from the district court's decision on the motion to compel; the motion to appoint the receiver; the motions to strike; the order appointing an ancillary receiver; and the decision regarding the conflict of interest.

On January 12, 2017, the district court held a hearing on the contempt motion. Norman, the Ancillary Receiver, and Sheriff's Deputy Phil Nickel were all called as witnesses. On February 7, 2017, the district court issued a decision on Sharon's motion for contempt in which it concluded that Norman was in contempt of its prior orders. The district court rejected two of Norman's preliminary arguments: (1) the Writ violated Idaho Rules of Civil Procedure because he did not receive it; and (2) to comply with his Sixth Amendment right to confrontation, Sharon's presence was required at the hearing in order to effectuate a charge of contempt. In dismissing Norman's first argument, the district court analyzed whether the Writ qualified as an order such that it must be immediately served upon all parties pursuant to Idaho Rule of Civil Procedure 2.3(b). The district court compared the *ex parte* issuance of the Writ to an issuance of a search warrant—in certain circumstances, both may be issued without notice to the person in possession for fear of destruction or concealment of the items to be seized. The district court noted that in this case, Sharon and the receiver in New York had been attempting to collect on the Judgment and gather assets for many years without success; therefore, serving the Writ without notice was appropriate and "more akin to a subpoena or warrant th[a]n to an order." Further, the district court cited *Thomas v. Stephen*, wherein this Court affirmed the issuance of an *ex parte* writ of assistance. 78 Idaho 266, 300 P.2d 811 (1956). Norman's second preliminary argument—that Sharon's presence was required to effectuate the charge of contempt—was also rejected by the district court because the Ancillary Receiver and the Sheriff's deputies were the individuals who laid out the facts necessary to allege contempt. The district court held that because Norman was able to confront them via cross-examination, Norman's Sixth Amendment right to confront was not violated.

After addressing Norman's preliminary arguments, the district court turned to Norman's main argument: whether a search warrant was necessary to enter Norman's home to effectuate the Writ. The district court compared a search warrant to a writ of assistance and noted the

significant differences, namely: a writ of assistance does not require a showing of probable cause that a criminal offense has been committed; a writ of assistance does not need to satisfy Fourth Amendment requirements; a writ of assistance does not simply allow, but rather commands a person to take possession of whatever is included in the writ; and a writ is used to enforce a court order or judgment. The district court concluded that a search warrant was not necessary in order for the Writ to be valid because, if that were the case, a judge would be required to make a determination of probable cause for criminal conduct, which has not been alleged here. Ultimately, the district court granted Sharon's motion for contempt and imposed the following sanctions: (1) the Sheriff's deputies and the Ancillary Receiver would return to Norman's house and perform their duties under the Writ; and (2) Norman would bear the costs associated with the first attempt to exercise on the Writ including Sharon's cost of bringing the motion for contempt.

### III. ISSUES ON APPEAL

**1.** Whether the district court abused its discretion in granting Sharon's motion to compel.

**2.** Whether the district court abused its discretion in appointing the Ancillary Receiver.

**3.** Whether Norman's constitutional rights were violated.

**4.** Whether the district court erred by holding that: (1) attachments to Louis Black's affidavit were not hearsay; and (2) Sharon's memorandum in support of her motion to appoint the Ancillary Receiver did not contain unsubstantiated or scandalous information without foundation.

**5.** Whether the district court erred by finding that there was not a conflict of interest between Sharon and the Ancillary Receiver.

**6.** Whether the district court erred by holding Norman in contempt of court.

**7.** Whether either party is entitled to costs and attorney fees on appeal.

### IV. STANDARD OF REVIEW

"Control of discovery is within the trial court's discretion." *Westby v. Schaefer*, 157 Idaho 616, 621, 338 P.3d 1220, 1225 (2014) (internal citations omitted).

> The test to determine whether a trial court has abused its discretion . . . consists of three parts asking whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason."

*Parks v. Safeco Ins. Co.*, 160 Idaho 556, 562, 376 P.3d 760, 766 (2016) (quoting *Marek v. Lawrence*, 153 Idaho 50, 53, 278 P.3d 920, 923 (2012)).

7

Similarly, "[t]he power to appoint a receiver is very largely in the discretion of the trial court, and an appellate court will not interfere with the exercise of such discretion except in cases of palpable abuse." *Northwestern & Pacific Hypotheekbank v. Dalton*, 44 Idaho 120, 124, 256 P. 93, 95 (1927) (quoting 18 Cal. Jur. 301).

## V. ANALYSIS

**A.** **The district court did not abuse its discretion by granting Sharon's motion to compel answers to the debtor's examination.**

Norman argues that the district court abused its discretion by granting Sharon's motion to compel. Norman's overarching claim is that the district court conflated the discovery process with the process of conducting a debtor's examination, which is found in Idaho Code sections 11-504 and 11-508.

Sharon argues that while a motion for contempt is one available remedy for a debtor's refusal to answer examination questions, it is not exclusive. Sharon notes that Rule 69 clearly defines a debtor's examination as discovery to be governed under Idaho Civil Procedure Rules 26 and 30, which allow a court to grant a motion to compel when a judgment debtor does not comply. Further, Sharon contends that a motion to compel was appropriate because Norman failed to answer questions that were within the scope of Idaho Rules of Civil Procedure 30 and 31, and because Norman was evasive and provided incomplete disclosure.

It is the appellant's burden to demonstrate that the district court abused its discretion. *Westby*, 157 Idaho at 621, 338 P.3d at 1225. "The trial court has broad discretion in determining whether or not to grant a motion to compel. The decision of the trial court will only be reversed when there has been a clear abuse of discretion." *Nightengale v. Timmel*, 151 Idaho 347, 351, 256 P.3d 755, 759 (2011) (internal citations and quotations omitted).

Rule 34(a) of the Idaho Rules of Civil Procedure, as it was drafted at the time the motion to compel was filed, provided that "any party may serve on any other party a request . . . to produce . . . any designated documents . . . which constitute or contain matters within the scope of Rule 26(b)." I.R.C.P. 34(a) (2015). In specifying the scope of discovery, Rule 26(b)(1) of the Idaho Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter . . . including the existence, description . . . and location of . . . persons having knowledge of any discoverable matter." I.R.C.P. 26(b)(1) (2015).

8

Parties seeking to execute on a judgment may utilize discovery. Indeed, Rule 69 of the Idaho Rules of Civil Procedure provides:

> In aid of judgment or execution, the judgment creditor . . . may obtain discovery from any person, including the judgment debtor, *as provided in these rules* and may examine any person, including the judgment debtor, in the manner provided by the practice of this state.

I.R.C.P. 69(c) (2015) (emphasis added).

Normal discovery rules still apply. For instance, Rule 30, which addresses oral depositions, provides that a party who wants to depose a person by oral questions must give reasonable written notice to every other party stating the time and place of the deposition. I.R.C.P. 30(b)(1) (2015). Similarly, a party seeking the production of documents must file with the court a notice of when and upon whom it was served. I.R.C.P. 34(d) (2015). Rule 37 provides that a party may move for an order compelling an answer if, *inter alia*, a deponent fails to answer a question asked under Rules 30 or 31. I.R.C.P. 37(a)(2) (2015). An evasive or incomplete answer must be treated as a failure to answer. I.R.C.P. 37 (a)(3) (2015). Rule 37 also requires a motion to compel to include "a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." I.R.C.P. 37(a)(2) (2015).

Idaho Code title 11 provides another avenue by which a judgment creditor may obtain discovery after a judgment has been entered. Idaho Code section 11-501 provides that if an execution is returned unsatisfied, a judgment creditor is entitled to an order from a judge requiring a judgment debtor to appear and answer under oath concerning his property. I.C. § 11-501. Idaho Code section 11-504 provides a judgment creditor may examine a judgment debtor's debtors:

> After the issuing or return of an execution against property of the judgment debtor or of any one of several debtors in the same judgment, or upon proof by affidavit or otherwise, to the satisfaction of the judge, that any person or corporation has money or property of such judgment debtor, or is indebted to him in an amount exceeding fifty dollars ($50.00), the judge may, by an order, require such person or corporation, or any officer or member thereof, to appear at a specified time and place before him, or a referee appointed by him, and answer concerning the same.

I.C. § 11-504. Further, Idaho Code section 11-508 provides that disobedience of orders under this section may result in being held in contempt of court. I.C. § 11-508.

As previously stated, "[c]ontrol of discovery is within the trial court's discretion." *Westby v. Schaefer*, 157 Idaho 616, 621, 338 P.3d 1220, 1225 (2014) (internal citation omitted). To determine whether a trial court has abused its discretion, this Court applies the following three-part test, which asks whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Parks*, 160 Idaho at 562, 376 P.2d at 766 (quoting *Marek*, 153 Idaho at 53, 278 P.3d at 923). In attempting to demonstrate that the district court abused its discretion, Norman cites several discovery rules and concludes that the district court violated the applicable legal standards. Norman's argument fails because he did not demonstrate that any part of the three-part abuse of discretion test was violated.

The first prong of the abuse of discretion test is satisfied because the district court noted in its decision that "[t]he control of the discovery process is within the discretion of the trial court." The second prong of the abuse of discretion test—whether the district court violated any legal standard or law in granting the motion to compel—is also satisfied. The legal standards at issue are threefold: (1) whether the motion to compel was a proper action; (2) whether notice requirements were satisfied; and (3) whether the parties conferred or attempted to confer prior to the filing of the motion to compel. First, the motion to compel was proper under to Rule 69(c), which allows a judgment creditor to utilize the traditional discovery process including a motion to compel. Idaho Code title 11 provides an alternate, but not exclusive, avenue by which Sharon could have examined Norman. Second, the required notice was effectuated on September 3, 2016, when a copy of the district court's order for a debtor's examination was served to Norman's counsel. Third, Sharon's letter to Norman after the examination and subsequent letter requesting and narrowing her discovery request constituted a good faith effort to confer before seeking court intervention especially considering Norman's pattern of evasiveness. In other words, it is unlikely that further attempts by Sharon to confer with Norman's attorney would have been successful in avoiding court intervention.

The third prong of the abuse of discretion test—whether the district court's granting of Sharon's motion to compel was outside the bounds of reason—is satisfied. The district court cited the applicable Idaho Rules of Civil Procedure, cited Norman's noncompliance with the debtor's examination, analyzed the propriety of Sharon's discovery requests, and explained why

10

a motion to compel was appropriate. The district court's action was reasonable. In sum, the district court did not abuse its discretion in granting Sharon's motion to compel.

**B.     The district court did not abuse its discretion in appointing the Ancillary Receiver.**

Norman argues that the district court's appointment of the Ancillary Receiver was an abuse of discretion because: (1) such an appointment is not supported by Idaho statutory or case law; and (2) the authority granted to the Ancillary Receiver had already been granted to the primary receiver in New York. Specifically, Norman argues that the district court erred in concluding that Idaho Code section 8-601 authorized the appointment of the Ancillary Receiver. In a related argument, Norman contends that it was inappropriate for the district court to appoint the Ancillary Receiver without bond.

Sharon contends that Idaho Code section 8-601 supported the appointment of the Ancillary Receiver. Specifically, Sharon cites Idaho Code section 8-601, which provides as follows, in pertinent part:

> A receiver may be appointed by the court in which an action is pending or has passed to judgment, or by the judge thereof:
>
> 1.  In an action . . . by a creditor to subject any property or fund to his claim.
>
> . . .
>
> 3. After judgment to carry the judgment into effect.
>
> 4.     . . . [I]n proceedings in aid of execution, when an execution has been returned unsatisfied, or when the judgment debtor refuses to apply his property in satisfaction of the judgment.
>
> . . .
>
> 6. In all other cases where receivers have heretofore been appointed by the usages of courts of equity.

I.C. § 8-601. Further, Sharon cites a decision of a district court in New York and a decision of the Fifth Circuit of the United States Court of Appeals for the proposition that the appointment of a local or ancillary receiver to assist a primary receiver is well established in the courts of equity. *See Meyers v. Moody*, 693 F.2d 1196, 1205 (5th Cir. 1982) (noting that after a New York court had rendered judgment, an ancillary receiver was appointed in Texas to preserve a company's Texas assets); *See also In Re Hayes*, 192 F. 1018 (Dist. Ct. S.D.N.Y. 1912) ("In granting an ancillary receivership the court ordinarily looks at nothing except the pendency of a proceeding in the parent district, the appointment there of a receiver, and the presence of assets in the district where the application is made."). Sharon acknowledges that a New York court had already

appointed a primary receiver for Norman's interest in CYB Master, LLC, but claims that the Idaho district court's appointment of the Ancillary Receiver was proper because Norman possesses the business records of CYB Master, LLC in his Pocatello home. Regarding Norman's bond-related argument, Sharon posits that the decision of whether to require a receiver to post bond is discretionary. Sharon contends that the district court did not abuse its discretion when it appointed the Ancillary Receiver to serve without bond.

"The power to appoint a receiver is very largely in the discretion of the trial court, and an appellate court will not interfere with the exercise of such discretion except in cases of palpable abuse." *Northwestern & Pacific Hypotheekbank v. Dalton*, 44 Idaho 120, 124, 256 P. 93, 95 (1927) (quoting 18 Cal. Jur. 301).

Norman's argument fails because he did not demonstrate that the district court's appointment of the Ancillary Receiver was an abuse of discretion. The district court did not abuse its discretion because it recognized that the decision was a matter of discretion, noted the circumstances that warranted the appointment of the Ancillary Receiver, and acted within the bounds of reason by authorizing the Ancillary Receiver to control only Norman's Idaho assets. Specifically, the district court did not violate the second prong of the abuse of discretion test because Idaho Code section 8-601(6) permits courts to appoint a receiver in cases where receivers had previously been appointed by courts of equity. I.C. § 8-601(6). *In Re Hayes* demonstrates that courts of equity have previously appointed ancillary receivers. 192 F. 1018. Therefore, the district court acted within the legal standards when it appointed the Ancillary Receiver. The district court satisfied the third prong of the abuse of discretion test because it reasoned that a local ancillary receiver would be necessary to gather Norman's Idaho assets. The district court exercised discretion by limiting the Ancillary Receiver's authority to only Idaho assets that were within the primary receiver's authorization.

Norman's bond-related argument was not preserved for appeal. "This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009) (quoting *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 368–69, 179 P.3d 323, 331–32 (2008)). Even if an issue was argued to a lower court, "to preserve an issue for appeal there must be a ruling by the [lower] court." *Id.* (citing *De Los Santos v. J.R. Simplot Co., Inc.*, 126 Idaho 963, 969, 895 P.2d 564, 570 (1995)).

According to the record on appeal, the district court judge issued the order appointing the Ancillary Receiver (without bond) on May 24, 2016, and Norman filed a written objection that same day. However, it does not appear that Norman's objection was ever noticed for a hearing, nor does it appear that the district court ruled upon Norman's objection. Accordingly, the issue was not preserved for appeal.

**C.      Norman's constitutional rights were not violated.**

Norman argues that the district court's orders related to Sharon's motion to compel, motion to appoint the Ancillary Receiver, and the district court's Writ violated his Fourth Amendment rights. Specifically, Norman argues that the Writ violated his Fourth Amendment rights because it permitted the government to enter his home, conduct a search, and to seize any property or things of value without a proper warrant. Norman argues that constitutional issues are present because the two-part test constructed by the Ninth Circuit Court of Appeals in *United States v. Miller* is satisfied: (1) the Ancillary Receiver, who attempted to effectuate the Writ, was acting as an agent of the government; and (2) Sharon acted with the intent to assist the government, and not for an independent purpose.

Separately, Norman claims that the fact that this is a civil case "in no way negates [his] constitutional rights." Norman likens his situation to the facts in *Camara v. Municipal Court of San Francisco*, in which the United States Supreme Court held that building inspectors' search of an apartment building was a "significant intrusion[] upon the interests protected by the Fourth Amendment, [and] that such search[] when authorized and conducted without a warrant procedure lack[ed] the traditional safeguards which the Fourth Amendment guarantees to the individual." 387 U.S. 523, 534 (1967). Norman continues, arguing that the target of the Writ—his money, or documents that may lead to his money—does not justify the violation of his Fourth Amendment rights. Further, Norman argues that the breadth of the Writ lacked the specificity required in a warrant. Norman also argues that his Fifth Amendment right to due process was violated by the district court's attempt to deprive him of his property without sufficient notice or purpose. Specifically, Norman argues that the Writ violated his due process rights because he did not have notice or an opportunity to be heard.

Lastly, Norman argues that Sharon's attempt to obtain his passwords to email accounts violated his First Amendment right to free speech. Norman argues that if the Ancillary Receiver

or Sharon were allowed to "surveil [his] communications, his speech would not only be chilled but immediately cut off."

Sharon argues that the Fourth Amendment's prohibition against unlawful search and seizure does not apply. Sharon notes that the Fourth Amendment only applies to a debtor if: (1) the actor (here, the Ancillary Receiver) is acting as an instrument or agent of the government; and (2) the debtor has a legitimate privacy interest with respect to the property. *In Re Kerlo*, 311 B.R. 256, 263 (Bankr. C.D. Cal. 2004). With respect to the first prong, Sharon argues that the Fourth Amendment does not generally protect against an unreasonable intrusion by a private party, but does apply to conduct of private parties acting as agents of the government. Sharon explains that to determine whether an individual is acting as a government agent, another two-part test is applied: (1) whether the government knew of and acquiesced to the intrusive conduct; and (2) whether the private party intended to assist law enforcement efforts or further his own needs. Finally, Sharon notes that the involvement of a government official does not necessarily transform private conduct into a government search or seizure, "especially . . . where the purpose of the government presence is to ensure the safety of the private party and not to 'reap the benefits' of the search or seizure." *In re Kerlo*, 311 B.R. at 264. Sharon argues that Norman did not have a legitimate privacy interest in his documents or things because he was previously required to answer truthfully during the debtor's examination.

Throughout her briefing, Sharon likens this case to *In re Kerlo*, wherein a bankruptcy court determined that the Fourth Amendment prohibition against unlawful searches and seizures did not apply to a bankruptcy trustee who was charged with assembling and liquidating the assets of an estate for the benefit of creditors. *In re Kerlo* 311 B.R. at 256.

Regarding Norman's Fifth Amendment claims, Sharon argues that Norman's due process rights were not violated because the Writ was a post-judgment matter, which means that Norman had an opportunity to be heard before the Judgment was rendered. In support of this argument, Sharon notes that in *Endicott-Johnson Corp. v. Encyclopedia Press*, 266 U.S. 285 (1924), the United States Supreme Court held that a post-judgment garnishment procedure did not require notice and opportunity for hearing.

The Fourth Amendment provides as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

14

particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

In *In re Kerlo*, a bankruptcy court analyzed Fourth Amendment issues related to a trustee's ability to administer property for the benefit of creditors in accordance with a court order. The court explained that a two-part test applied to determine whether the trustee's actions implicated the Fourth Amendment rights of the debtor: (1) whether the trustee was acting as an instrument or agent of the government; and (2) whether the debtor had a legitimate expectation of privacy with respect to his property. Regarding the first prong, the court explained as follows:

> The general principles for determining whether a private individual is acting as a governmental instrument or agent for Fourth Amendment purposes have been synthesized into a two part test. According to this test, we must inquire:
>
> (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the private party intended to assist law enforcement efforts or further his own ends.

*In re Kerlo*, 311 B.R. at 263.

The court noted that the Fourth Amendment does not apply where a private party has a legitimate independent motivation for engaging in the challenged conduct. *Id.* Further, the court noted that the "involvement of government officials does not necessarily transform private conduct into a government search or seizure. . . . This is especially true where the purpose of the government presence is to ensure the safety of the private party and not to 'reap the benefits' of the search or seizure." *Id.* at 264. Ultimately, the court held that, despite the fact that the trustee sought assistance from a governmental official in carrying out his statutory and fiduciary duties, she was not a law enforcement official because she was acting independently under her statutory mandate as a trustee. *Id.* at 265. Thus, the court turned to the remaining analysis: (1) whether the government knew of and acquiesced in the conduct, and (2) whether the trustee acted with the intent to assist the government in its investigatory or administrative purposes. *Id.* The court held that the Fourth Amendment was not implicated because the trustee had a legitimate, statutory, independent reason for enforcing the court's order—maximizing the value of the assets of the estate for distribution to the creditors—and only enlisted the assistance of the government to assist her in carrying out the orders. *Id.*

Lastly, the court addressed whether the defendant had a legitimate expectation of privacy. *Id.* The court provided the following framework for its analysis:

15

> A legitimate expectation of privacy requires both (1) a subjective expectation of privacy, and (2) an objectively reasonable expectation of privacy. . . . In determining whether someone has a legitimate expectation of privacy for Fourth Amendment purposes, courts consider the following factors: (1) whether the person has a proprietary or possessory interest in the place searched or property to be seized, (2) whether the person has the right to exclude others from the premises, (3) whether the person has taken normal precautions to maintain his or her privacy, and (4) whether the person is legitimately on the premises.

*Id.* at 265. The court explained that because the debtor was required to surrender the property, she no longer had a possessory interest therein and could not exclude the trustee from the property. *Id.* at 266.

Regarding Norman's Fifth Amendment claim, the United States Supreme Court has held that:

> The words "due process of law," when applied to judicial proceedings, "mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights." . . . They require a proceeding which, observing the general rules thus established, follows forms of law appropriate to the case and just to the parties to be affected; and which, whenever it is necessary for the protection of the parties, gives them an opportunity to be heard respecting the justice of the judgment sought. . . . However, the established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take "notice of what will follow," no further notice being "necessary to advance justice."

*Endicott-Johnson Corp. v. Encyclopedia Press*, 266 U.S. at 288.

As an aside, this Court has held that it will not consider issues that are "only mentioned in passing and not supported by any cogent argument or authority." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010).

Norman's Fourth Amendment claim is meritless. Similar to the trustee in *In re Kerlo*, who was acting on behalf of the creditors, the Ancillary Receiver was acting on behalf of Sharon. Although the district court appointed the Ancillary Receiver, such appointment does not result in the Ancillary Receiver being an instrument of the government. Indeed, in *In re Kerlo* the trustee was independent, despite acting according to a court order. The Sheriff's deputies who were present at the time the Writ was served were only there to assist the Ancillary Receiver; thus,

16

there was no government investigatory purpose. Further, Norman did not have a privacy interest in the property listed in the Writ because he was already required to surrender the information and documents pursuant to the debtor's examination.

Norman's Fifth Amendment claim is meritless because the United States Supreme Court has clearly held that the Fifth Amendment does not require "a defendant who has been granted an opportunity to be heard and has had his day in court" to be given "further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment." *Endicott-Johnson Corp. v. Encyclopedia Press*, 266 U.S. at 288. Norman has already had notice and opportunity to be heard throughout the proceedings, including the New York divorce proceedings and the several hearings in Idaho; accordingly, his due process claims related to the district court's attempt to seize his property are unpersuasive.

Lastly, Norman's First Amendment claim will not be addressed by this Court because it is merely mentioned in passing and not supported by cogent argument.

**D.** **The district court did not err by holding that: (1) attachments to Louis Black's affidavit were not hearsay; and (2) Sharon's memorandum in support of her motion to appoint the Ancillary Receiver did not contain unsubstantiated or scandalous information.**

Norman argues that the district court erred by not striking portions of Mr. Black's affidavit or Sharon's memorandum in support of her motion to appoint the Ancillary Receiver. Norman argues that attachments to Mr. Black's affidavit were inadmissible hearsay. Norman also alleges that portions of Sharon's memorandum included "false, immaterial, impertinent, and/or scandalous" information that should have been struck.

Sharon argues that the district court did not improperly consider hearsay or unsubstantiated and scandalous information. Specifically, Sharon notes that in the discovery process, not all requested material must be admissible; rather, the information must only appear "reasonably calculated to lead to the discovery of admissible evidence." I.R.C.P. 26(b)(1). Sharon contends that the district court's orders with which Norman takes issue were in pursuit of discovery because they related to the debtor's examination, which is discovery governed by the Idaho Rules of Civil Procedure. Lastly, Sharon argues that merely because Norman disagrees with the facts or law in her memorandum does not mean that her memorandum and supporting affidavits were immaterial or scandalous.

17

As previously held, the debtor's examination was part of discovery, pursuant to Rule 69 of the Idaho Rules of Civil Procedure. Accordingly, the discovery rules apply to this issue, namely, Rule 26.

Rule 26 of the Idaho Rules of Civil Procedure provides that "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." I.R.C.P. 26(b)(1) (2015).

Norman's allegation that the district court abused its discretion is meritless because the district court's decisions complied with the three-part abuse of discretion test. First, the district court recognized its decision as one of discretion. Second, the district court did not violate a standard or law in rendering its decision. The district court cited the applicable Idaho Rules of Civil Procedure (Rules 26(b)(1) and 84(p)) and made a reasonable holding based thereon. Lastly, the district court's decision was reasonable evidenced by its statement that "[b]ecause this is not trial, and because Black's affidavit was given to aid in the discovery process, the [c]ourt will not strike the affidavit, but will give it the weight to which it is entitled." Further, the district court reasoned that Norman's allegations regarding Sharon's memorandum was "solely his opinion and nothing in the rules prohibits a party from writing what they deem to be necessary for their case, even if the other side disagrees."

E.     **The district court did not err by finding that a conflict of interest did not exist between Sharon and the Ancillary Receiver.**

Norman raises two claims in arguing that the district court erred by finding that a conflict of interest did not exist between Sharon and the Ancillary Receiver. First, Norman argues that there was a conflict of interest because Sharon paid the Ancillary Receiver directly. Second, Norman argues that there was a conflict of interest in Sharon's counsel representing the Ancillary Receiver. Specifically, Norman claims that a conflict of interest arose when Sharon's counsel filed a motion for contempt on behalf of the Ancillary Receiver.

In response to Norman's first argument, Sharon claims that her payment to the Ancillary Receiver did not create a conflict of interest. Sharon notes that she sought the appointment of the Ancillary Receiver; the Ancillary Receiver had a right to be compensated; and the district court's order requiring payment from Sharon, which may be recovered from property obtained from Norman, was a proper exercise of discretion. For support, Sharon cites the 11th Circuit Court of Appeals as follows:

18

The district court appointing the receiver has discretion over who will pay the costs of the receiver. It is appropriate and obvious that a receiver will make expenditures to maintain trust property. The court in equity may award the receiver fees from property securing a claim if the receiver's acts have benefitted that property. Other courts have also held that it is appropriate for a receiver to be paid from the proceeds of secured property if the receiver has benefitted that property.

Some courts have held that the receiver's right to payment is created by the creditors' implied consent or acquiescence in the receivership proceedings. Perhaps it is more accurate to say there is an

> implied understanding that the court which appointed him and whose officer he is will protect his right to be paid for his services, to be reimbursed for his proper costs and expenses.

Or simply, those who benefit from a receivership should pay for that benefit.

*SEC v. Elliot*, 953 F.2d 1560, 1576 (11th Cir. 1992) (internal citations omitted).

Regarding Norman's second claim, Sharon argues that her motion to compel incorrectly identified the Ancillary Receiver's counsel as Sharon's counsel. Sharon contends that her counsel did not represent the Ancillary Receiver in the matter; rather, the motion to compel was filed only after the Ancillary Receiver alleged that Norman failed to cooperate with the district court's order. Sharon claims that her counsel filed the motion to compel as a means of providing notice to the district court of Norman's alleged failure to comply with the district court's order.

"The power to appoint a receiver is very largely in the discretion of the trial court, and an appellate court will not interfere with the exercise of such discretion except in cases of palpable abuse." *Northwestern & Pacific Hypotheekbank v. Dalton*, 44 Idaho 120, 124, 256 P. 93, 95 (1927) (quoting 18 Cal. Jur. 301). As discussed above, it is not unusual for a court to require the party requesting a receiver to cover the costs associated therewith. *SEC v. Elliot*, 953 F.2d 1560, 1576 (11th Cir. 1992).

The district court did not abuse its discretion. The district court authored a well-reasoned decision wherein it cited case law standing for the proposition that a party seeking a receiver should pay the fees associated therewith. The district court reasoned that because Sharon requested the appointment of the Ancillary Receiver, she "has a slightly more significant role moving forward. Part of that role is payment." Further, the district court noted that there was no case law in Idaho that forbid such a procedural practice for payment. Regarding Norman's second claim, the district court found that the so called "representation" only occurred as a result of Norman's alleged contempt. The district court reasoned that because Norman was unlikely to

file contempt charges against himself, it was appropriate for Sharon's counsel to file contempt charges "based on knowledge from the [Ancillary Receiver] on behalf of [Sharon]." The district court's decision satisfied the three-part abuse of discretion test.

**F.      The district court did not err by holding Norman in contempt of court.**

Norman contends that the district court erred by holding him in contempt. First, he challenges the district court's holding that he did not comply with the Writ, arguing that: (1) he was not provided notice of the Writ; (2) the Writ ordered the Sheriff's Department to act, not him, therefore, he did not disobey the Writ; and (3) he did not have the ability to comply with the Writ because the Ancillary Receiver did not make his presence known at the time the Writ was served upon him. Second, Norman argues that the district court did not find that he *willfully* disobeyed the Writ, which is required to hold him in contempt. Third, Norman argues that his Sixth Amendment right to confront is implicated because Sharon was not present at the motion for contempt hearing.

Sharon argues that Norman's Writ-related arguments are meritless. Specifically, she argues that Norman knew that he was to comply with the Writ by producing certain documents because the district court's previous Motion to Compel Decision and Order Appointing Ancillary Receiver required similar production. Further, Sharon argues that Norman did not need notice of the Writ because this is a post-judgment proceeding; accordingly, he had already been ordered to cooperate with the Ancillary Receiver and to produce certain documents in the previous two orders. Second, Sharon argues that Norman's *willful* disobedience is evidenced by his failure to comply with the district court's previous two orders, and his refusal to permit entry to the Sheriff's deputies who accompanied the Ancillary Receiver. Third, Sharon argues that Norman's Sixth Amendment right to confront was not violated because she was not a witness of the contempt; accordingly, her presence at the contempt proceeding would have in no way assisted either of the parties. Sharon notes that Norman had the opportunity to confront and cross-examine the Ancillary Receiver and the Sheriff's deputies, who witnessed the contempt.

In *Thomas v. Stevens*, 78 Idaho 266, 270–74, 300 P.2d 811, 812–815 (1956), this Court affirmed the issuance of an *ex parte* writ of assistance that directed a sheriff to put the plaintiffs in possession of certain property.

Idaho Code section 7-601 defines contempt as "disobedience of any lawful judgment, order or process of the court." I.C. § 7-601(5). In *In re Weick*, this Court held that, to find

20

contempt, it must be shown that the accused *willfully* disobeyed a court order. 142 Idaho 275, 281, 127 P.3d 178, 184 (2005). This Court defined "willful" as "'an indifferent disregard of duty' or 'a remissness and failure in performance of a duty' but not a 'deliberately and maliciously planned dereliction of duty.'" *Id*. This Court also stated that: "Under our law, inability to comply is not a defense unless the contemnor complied to the extent of his ability. *In re Bean*, 58 Idaho 797, 802, 79 P.2d 540, 542 (1938)."

Whether Norman's Sixth Amendment right to confront Sharon applies to the contempt proceeding depends on whether the district court held Norman in civil or criminal contempt of court. *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 863, 55 P.3d 304, 317 (2002). ("The distinction between civil and criminal contempt is important because of the federal constitutional rights that the United States Supreme Court has held applicable in nonsummary criminal contempt proceedings. Those rights include . . . the right to cross-examine witnesses.").

> Whether contempt is criminal or civil does not depend upon the nature of the lawsuit in which the contempt proceedings are brought. A civil contempt sanction can be imposed in a criminal case (*e.g*., imprisoning a recalcitrant witness until he testifies), and a criminal contempt sanction can be imposed in a civil case (*e.g*., imprisoning a child support payor for thirty days for failing to pay the support previously ordered). In addition to the confusion caused by the crime of contempt, the distinction between criminal and civil contempt is further confused by the fact that there are several definitions of those terms.

*Id.* at 862, 55 P.3d at 316. In *Camp*, this Court followed the United States Supreme Court definitions of civil and criminal contempt, which differentiated between the two types of contempt based on the character of the sanctions imposed. *Id.* at 863, 55 P.3d at 317. The United States Supreme Court held that an unconditional sanction is criminal in nature and therefore implicates the Sixth Amendment. *Id.* (citing *Hicks v. Feiock*, 485 U.S. 624, 633 (1988)). A sanction is unconditional if "the contemnor cannot avoid any sanction by complying with the court order violated." *Id*. However, there are two relevant exceptions to this rule: (1) a sanction "is conditional if the contemnor can avoid any sanction, including probation, by doing the act he had been previously ordered to do;" and (2) "[a]n unconditional fine is a civil contempt penalty under federal law if it is paid to the complainant and is compensatory (based upon the damages actually sustained by the complainant)." *Id.*

On May 24, 2016, the district court issued an order appointing the Ancillary Receiver. Therein, the district court ordered "All parties to this action . . . to cooperate with and assist the Ancillary Receiver in taking possession of the property described above." Norman had notice of

21

this order and he failed to obey it when he refused the Ancillary Receiver admission to his home to take possession of his business records. As the district court's contempt decision concluded, "Here, the [c]ourt had commanded Norman to cooperate with the ancillary receiver and turn over certain documents and items. Norman did not do this." There was substantial—indeed overwhelming—evidence that Norman willfully violated the district court's May 24, 2016, order. Thus, the district court's contempt order is affirmed.

The Sixth Amendment is not implicated by the district court's contempt decision. As previously noted, whether the Sixth Amendment is implicated depends on the character of the sanction imposed. *Camp*, 137 Idaho at 863, 55 P.3d at 317 (citing *Hicks v. Feiock*, 485 U.S. 624, 633 (1988)). An unconditional sanction is generally considered to be criminal in nature unless the contemnor can avoid the sanction by doing the act that he had been previously ordered to do, or, in the case of a fine, if the fine is paid to the complainant and is compensatory. *Id.* at 863, 55 P.3d at 317. Here, the district court imposed two sanctions: (1) Norman was ordered to comply with the original Writ (allow the Ancillary Receiver to perform his duties with the help of the Sheriff's deputies); and (2) Norman was ordered to bear the cost associated with the first attempt to execute on the Writ, including the cost of bringing the motion for contempt. Both of these sanctions fall within the previously stated exceptions because: (1) Norman can comply by doing the act he had been previously ordered to do; and (2) Norman's fine is compensatory. Therefore, Norman's Sixth Amendment rights are not implicated.

### G.      Sharon is entitled to attorney fees on appeal.

Norman's argument regarding attorney fees on appeal, in its entirety, is as follows: "Appellant moves the Court to award all attorney fees and costs incurred as a result of this appeal pursuant to Idaho Appellate Rule 41 and I.R.C.P. 37(c)."

Sharon requests attorney fees on appeal because Norman's appeal was brought frivolously, unreasonably, and without foundation. *Jim & Maryann Plane Family Trust v. Skinner*, 157 Idaho 927, 342 P.3d 639 (2015). Sharon contends that Norman's arguments were not well grounded in fact or warranted by existing law and that his sole purpose was to "cause [her] to incur additional legal fees and to prolong this litigation process as to enable him to continue to evade collection of the judgments against him."

Idaho Code section 12-121 provides that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case

was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121.

We award Sharon attorney fees on appeal because she is the prevailing party and because Norman's appeal was brought frivolously, unreasonably, and without foundation. Norman's arguments were not well grounded in fact or warranted by existing law. The facts and procedural nature of this case support Sharon's contention that Norman's sole purpose was to cause her to incur additional legal fees and to prolong this litigation to evade collection of the judgments against him. Norman's appeal amounts to nothing more than continued delay and evasive action.

## VI. CONCLUSION

We affirm the district court's decision and award Sharon costs and attorney fees on appeal.

Chief Justice BURDICK, Justices HORTON, BRODY and Justice *pro tem* SIMPSON, CONCUR.